1          UNITED STATES DISTRICT COURT
2            DISTRICT OF PUERTO RICO

3  ELSA CARDALDA-SÁNCHEZ,

4       Plaintiff,                    Civil No.  08-1819 (JAF)

5       v.

6  UNIVERSIDAD CARLOS ALBIZU,
7
8       Defendant.


9                    **OPINION AND ORDER**

10       Plaintiff, Elsa Cardalda-Sánchez, brings this action against

11  Defendant Universidad Carlos Albizu ("the University") alleging

12  discrimination on the basis of religion, disability, and national

13  origin, in violation of Title VII of the Civil Rights Act of 1964

14  ("Title VII"), 42 U.S.C. §§ 2000 *et seq.*; the Americans with

15  Disabilities Act ("ADA"), 42 U.S.C. §§ 21101 *et seq.*; Puerto Rico

16  Law No. 100, of June 30, 1959, 29 L.P.R.A. § 146 (2001); Law No.

17  80, of May 30, 1976, 29 L.P.R.A. § 185a (2006); Law No. 44, of

18  July 24, 1985, 1 L.P.R.A. § 501 (2008); and Law No. 115, of

19  December 19, 1991 ("Law 115"), 29 L.P.R.A. § 194a (2001). (Docket

20  No. 1.) Defendant moves to stay or abstain under the doctrine

21  established in Col. River Water Conservation Dist. v. United

22  States, 424 U.S. 800, 817 (1976) ("Colorado River"). (Docket No.

23  11.) Plaintiff opposes (Docket No. 20), Defendant replies (Docket

24  No. 23), and Plaintiff surreplies (Docket No. 26).

1                                    **I.**

2                    **Factual and Procedural History**

3          Unless otherwise noted, we derive the following factual

4     summary from the complaint. (Docket No. 1.)

5          Plaintiff has a doctorate in psychology. Although born in

6     New York, she considers herself Cuban, as both of her parents are

7     from  Cuba. She suffers from severe back ailments and spasms as

8     a result of several herniated disks. Defendant is a Puerto Rico

9     corporation that offers college and post-graduate degrees in

10    psychology.

11         Defendant hired Plaintiff as an associate professor in 1998,

12    under a one-year contract. Upon completion of the year, Plaintiff

13    received a favorable evaluation, as a result of which her

14    contract was renewed for an additional three-year term, beginning

15    in the Fall of 1999. After the three-year term passed, Plaintiff

16    received another favorable evaluation, and her contract was

17    renewed for a five-year term. Typically, Defendant hires faculty

18    members based on a one-year contract, followed by a three-year

19    contract, followed by a five-year contract, followed by a

20    renewable contract for ten years. All contract renewals are

21    contingent on the faculty member receiving favorable evaluations.

Civil No. 08-1819 (JAF)                                              -3-

1      On October 10, 2006, Defendant's Human Resources Director

2    notified Plaintiff that the University's chancellor, Lourdes

3    García, had filed an internal complaint against Plaintiff. On

4    October 16, 2006, in anticipation of the termination of her five-

5    year contract in August 2007, Plaintiff requested a promotion

6    from associate professor to full professor. On October 17, 2006,

7    Plaintiff filed a complaint at the Anti-Discrimination Unit of

8    the Puerto Rico Department of Labor ("ADU"), alleging that

9    Defendant had discriminated against her and subjected her to a

10   hostile work environment on the basis of her disability,

11   religious beliefs, and national origin. Specifically, she claimed

12   that Defendant harassed her and made arbitrary demands of her at

13   work; provided her with inferior working conditions because of

14   her disability, religion, or national origin; failed to comply

15   with University regulations and procedures regarding Plaintiff's

16   evaluations, promotion, and contract renewal; denied her

17   employment benefits; mocked the way she practiced her religion;

18   failed to accommodate her disability; and intended to terminate

19   her employment.   On November 2, 2006, Plaintiff filed an

20   administrative charge against García based on employment

21   harassment and other complaints.

22      As a result of the two internal complaints, the one filed by

23   García against Plaintiff and the one filed by Plaintiff against

1    García, the University began an internal administrative response.

2    The University scheduled an administrative hearing for early

3    December 2006, but delayed and rescheduled it several times.

4         On February 27, 2007, the ADU held a hearing on Plaintiff's

5    claims. Plaintiff expressed her wish to proceed through an

6    alternative mediation process.  However, Defendant stated that

7    it had decided not to renew Plaintiff's contract. On April 27,

8    2007, the Human Resources Director informed Plaintiff that her

9    internal complaint against García had been dismissed because

10   Plaintiff had chosen to proceed with her claims at the ADU.

11        On May 10, 2007, the University held a hearing regarding

12   García's complaint against Plaintiff, with attorney Juan Arroyo

13   Elicier ("Arroyo") as the examining officer. At the hearing,

14   Plaintiff objected to Arroyo's position as examining officer,

15   because he had previously served as an attorney for the

16   University and Plaintiff. As a result of these concerns, Arroyo

17   recused himself, and the hearing ended. On May 14, 2007, the

18   University notified Plaintiff that García's complaint against her

19   was being closed without prejudice.

20        On May 15, 2007, Plaintiff submitted a settlement proposal

21   to Defendant. The next day, the University President, Jorge

22   González, informed Plaintiff that her contract would not be

23   renewed in August 2007. The University has a regulation stating

1  that "[f]aculty search committees have primary responsibility for

2  evaluating the credentials of applicants for Faculty positions

3  . . . [w]hen [employment] decisions are reached, the Faculty

4  member should receive written explanation and has a right to

5  appeal for reconsideration." However, González did not explain

6  why Plaintiff's contract would not be renewed, and Plaintiff was

7  never evaluated for the renewal of her contract or the promotion

8  she requested. After receiving the letter of nonrenewal,

9  Plaintiff submitted an appeal to the University's Board of

10  Trustees. This appeal was ultimately denied, and Plaintiff had

11  to leave her position as a professor at the University when her

12  contract expired on August 27, 2007.

13      On May 18, 2007, Plaintiff filed a complaint in the Puerto

14  Rico Court of First Instance, requesting injunctive relief under

15  Law 115 and Law No. 2, of October 17, 1961 ("Law 2") 32 L.P.R.A.

16  §§ 3118-32 (2004). (Docket No. 16-2.) Law 115 provides that "[n]o

17  employer may discharge, threaten, or discriminate against an

18  employee regarding the terms, conditions, compensation, location,

19  benefits or privileges of the employment should the employee

20  offer or attempt to offer, verbally or in writing, any testimony,

21  expression or information before a legislative, administrative

22  or judicial forum in Puerto Rico." 29 L.P.R.A. § 194a. Law 115

23  further states that successful plaintiffs may obtain economic and

1    emotional damages and reinstatement in their jobs. Law 2 provides

2    employees with a process for the expedited disposition of labor

3    claims. 32 L.P.R.A. §§ 3118-32. In the Commonwealth complaint,

4    Plaintiff did not assert claims under Title VII, the ADA, or

5    Puerto Rico antidiscrimination laws. (Docket No. 16-2.) On July

6    3, 2007, the Court of First Instance dismissed the request for

7    injunctive relief as premature. (Docket No. 16-3.) It is unclear

8    from the record whether Plaintiff appealed this judgment and

9    whether it became final.

10        At some point, Plaintiff amended her discrimination

11   complaint before the ADU to include allegations that Defendant

12   decided not to renew Plaintiff's contract and took other adverse

13   employment actions against her in retaliation for Plaintiff's

14   initial filing with the ADU. Plaintiff also requested permission

15   from the ADU to continue with her claims in court. On April 29,

16   2008, the ADU sent Plaintiff a right-to-sue letter.

17        On July 27, 2008, Plaintiff filed the present complaint in

18   federal district court against Defendant. (Docket No. 1.)

19   Defendant moved to dismiss or stay on February 18, 2009. (Docket

20   No. 12.) Plaintiff opposed on March 31, 2009 (Docket No. 20),

21   Defendant replied on April 14, 2009 (Docket No. 23), and

22   Plaintiff surreplied on April 27, 2009 (Docket No. 26).

1                                    **II.**

2                          **Standard Under Rule 12(b)(6)**

3        A defendant may move to dismiss an action against him, based

4    solely on the complaint, for the plaintiff's "failure to state

5    a claim upon which relief can be granted." Fed. R. Civ. P.

6    12(b)(6).    In   assessing   this   motion,   we   "accept[]   all

7    well-pleaded facts as true, and we draw all reasonable inferences

8    in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar

9    Found., 993 F.2d 962, 971 (1st Cir. 1993).

10       The complaint must demonstrate "a plausible entitlement to

11   relief" by alleging facts that directly or inferentially support

12   each material element of some legal claim. Gagliardi v. Sullivan,

13   513 F.3d 301, 305 (1st Cir. 2008) (quoting Bell Atl. Corp. v.

14   Twombly, 550 U.S. 544, 559 (2007)). Typically, "specific facts

15   are not necessary; the statements need only 'give the defendants

16   fair notice of [the claim] and the grounds upon which it rests.'"

17   Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008)

18   (quoting Erickson v. Pardus, 551 U.S. 89 (2007)).

19                                   **III.**

20                                 **Analysis**

21       Defendant moves for Colorado River abstention and moves to

22   dismiss the claim for injunctive relief under Rule 12(b)(6) as

1    barred by res judicata. (Docket No. 11.) We address these

2    arguments in turn.

3    **A.   Colorado River Abstention**

4         Defendant argues that we should abstain or stay under the

5    Colorado River doctrine because Plaintiff has an ongoing case in

6    Commonwealth court stemming from the same underlying set of

7    facts. (Docket No. 11.)

8         Colorado River abstention permits us to "abstain from

9    hearing a case due to the presence of a concurrent state

10   proceeding for reasons of wise judicial administration." United

11   States v. Fairway Capital Corp., 483 F.3d 34, 40 (1st Cir. 2007)

12   (citing Colorado River, 424 U.S. at 819) (internal quotation

13   marks omitted). "Generally, as between state and federal courts,

14   the rule is that 'the pendency of an action in state court is no

15   bar to proceedings concerning the same matter in the [f]ederal

16   court having jurisdiction . . . .'" Colorado River, 424 U.S. at

17   817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)).

18   Colorado River abstention applies only in limited circumstances;

19   we consider eight factors to determine whether to decline

20   jurisdiction in a particular case:

21               (1) whether either court has assumed
22          jurisdiction over a res; (2) the
23          inconvenience of the federal forum; (3) the
24          desirability of avoiding piecemeal
25          litigation; (4) the order in which the forums

1    obtained jurisdiction; (5) whether state or
2    federal law controls; (6) the adequacy of the
3    state forum to protect the parties'
4    interests; (7) the vexatious or contrived
5    nature of the federal claim; and (8) respect
6    for the principles underlying removal
7    jurisdiction.

8    Fairway Capital, 483 F.3d at 40 (quoting KPS & Assocs. v. Designs

9    by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003)). No single factor

10   is determinative; instead, we must balance our "obligation to

11   exercise jurisdiction" with the factors that weigh against that

12   exercise. Colorado River, 424 U.S. at 819.

13       Here, the only factor that arguably weighs in favor of

14   abstention is the fact that the Commonwealth action was filed

15   first, as Plaintiff filed her complaint in the Puerto Rico Court

16   of First Instance on May 18, 2007, and filed the present action

17   on July 27, 2008. (Docket Nos. 1, 16-2.) However, Plaintiff

18   presents a reasonable explanation for why she filed in Puerto

19   Rico court first: Her Commonwealth charges were an effort to seek

20   protections immediately available at Puerto Rico law, and had she

21   attempted, in May 2007, to file her charges together in federal

22   court, her discrimination charges would have been subject to

23   dismissal for failure to exhaust. (Docket No. 20); see 42 U.S.C.

24   § 2000e-5(e)(1), (f)(1) (requiring Title VII plaintiff to file

25   administrative charge prior to initiating action in federal

1    district court); 42 U.S.C. § 12117 (applying Title VII exhaustion

2    requirements to ADA cases). We, therefore, find that this factor

3    weighs in favor of abstention, although only weakly.

4         As to the remaining factors, although the Puerto Rico court

5    would have been an adequate forum for Plaintiff's federal claims,

6    this does not weigh in favor of abstention. See Fairway Capital,

7    483 F.3d at 43 (quoting Bethlehem Contracting Co. v.

8    Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986)

9    (reasoning that "the possibility that the state court proceeding

10   might adequately protect the interests of the parties is not

11   enough to justify the district court's deference to the state

12   action") (internal quotation marks omitted)). The other factors

13   counsel in favor of our retaining jurisdiction. Accordingly, we

14   decline to dismiss or stay the complaint under the Colorado

15   River doctrine. See 424 U.S. at 817-19.

16   **B.   Res Judicata**

17        Defendant argues that res judicata bars Plaintiff's request

18   for injunctive relief under Law 115 because the Puerto Rico Court

19   of First Instance denied that claim in its July 3, 2007, opinion.

20   (Docket No. 11.)

21        Because we "accord a Puerto Rico judgment the same

22   preclusive effect as would a Puerto Rico court, see 28 U.S.C.

1    § 1738, we apply Puerto Rico res judicata law." <u>Gener-Villar v.</u>

2    <u>Adcom Group, Inc.</u>, 417 F.3d 201, 205 (1st Cir. 2005). Puerto Rico

3    law precludes litigation of claims "that were, or could have

4    been, brought in a previous action for which judgment has been

5    rendered," where there is "perfect identity between the things,

6    causes and person of the litigants." <u>Barreto-Rosa v. Varona-</u>

7    <u>Méndez</u>, 470 F.3d 42, 45 (1st Cir. 2006) (quoting 31 L.P.R.A.

8    § 3343 (1990)) (internal quotation marks omitted). The doctrine

9    requires a prior judgment on the merits that is final and

10   unappealable. <u>Cruz v. Melecio</u>, 204 F.3d 14, 20 (1st Cir. 2000)

11   ("[A Puerto Rico] court judgment cannot be accorded preclusive

12   effect until all available appeals have been exhausted."). Under

13   Puerto Rico law, claim preclusion attaches to a second action

14   even if the plaintiff's first action was dismissed as premature.

15   <u>See Robles Meléndez v. Merck & Co.</u>, 770 F. Supp. 71, 76 (D.P.R.

16   1991).

17        On July 3, 2007, the Puerto Rico Court of First Instance

18   issued a judgment dismissing Plaintiff's request for injunctive

19   relief as premature. (Docket No. 16-2.) This decision would

20   appear to preclude further litigation of the same claim if it

21   were final and unappealable. <u>See Robles Meléndez</u>, 770 F. Supp.

22   at 76. Defendant asserts, but does not provide the documentation

Civil No. 08-1819 (JAF)                                          -12-

1    to prove, that Plaintiff appealed the denial of her Law 115 claim

2    before the Puerto Rico Supreme Court, which denied the appeal.

3    (Docket No. 11.) The present complaint is not clear as to the

4    factual basis of Plaintiff's Law 115 claim, or, for that matter,

5    any of her other claims. (See Docket No. 1.) Therefore, we cannot

6    determine whether Plaintiff is indeed attempting to relitigate

7    the claim already denied as premature by the Puerto Rico Supreme

8    Court.

9         Accordingly, we order Defendant to show cause, **on or before**

10   **June 26, 2009,** as to why we should not deny its motion to dismiss

11   on res-judicata grounds. Defendant must supply documentation

12   demonstrating that the judgment in Plaintiff's Puerto Rico case

13   was final and unappealable. We also grant Plaintiff **until**

14   **June 26, 2009,** to amend her complaint to state the factual basis

15   underlying each claim so we can decide the res-judicata issue and

16   any further motions.

17                                    **IV.**

18                                 <u>**Conclusion**</u>

19        In accordance with the foregoing, we hereby **DENY IN PART**

20   Defendant's motion to dismiss (Docket No. 11). We **DENY**

21   Defendant's motion to dismiss or stay under <u>Colorado River</u>. We

22   also **ORDER** Defendant to **SHOW CAUSE, on or before June 26, 2009,**

Civil No. 08-1819 (JAF)                                              -13-

1    as to why we should not deny its motion to dismiss on res-

2    judicata grounds. To prevail, Defendant must supply documentation

3    demonstrating that the judgment in Plaintiff's Puerto Rico case

4    was final and unappealable. We also **ORDER** Plaintiff to amend her

5    complaint to state the factual basis underlying each claim **on or**

6    **before June 26, 2009.**

7         **IT IS SO ORDERED.**

8         San Juan, Puerto Rico, this 10th day of June, 2009.

9                                   s/José Antonio Fusté
10                                  JOSE ANTONIO FUSTE
11                                  Chief U.S. District Judge