1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3   ELSA CARDALDA-SÁNCHEZ,

4        Plaintiff,

                                            Civil No.  08-1819 (JAF)
5        v.

6   UNIVERSIDAD CARLOS ALBIZU,
7
8        Defendant.

9                    **<u>OPINION AND ORDER</u>**

10       Plaintiff, Elsa Cardalda-Sánchez, brings this action against Defendant, Universidad

11   Carlos Albizu ("the University"), alleging discrimination on the basis of religion, disability, and

12   national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

13   §§ 2000e–2000e-17; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213;

14   Puerto Rico's employment discrimination statute ("Law 100"), 29 L.P.R.A. §§ 146–151 (2009);

15   and Puerto Rico's disability discrimination statute ("Law 44"), 1 L.P.R.A. §§ 501–511(b)

16   (2008).  (Docket No. 40.)  In addition, Plaintiff alleges violations of Puerto Rico's statute

17   prohibiting discharge without just cause ("Law 80"), 29 L.P.R.A. §§ 185a–185m (2009).  The

18   parties filed cross summary-judgment motions (Docket Nos. 49; 53).  Each filed an opposition

19   to the other's summary-judgment motion (Docket Nos. 78; 79), and each replied to the other's

20   opposition (Docket Nos. 88; 92).  Finally, Plaintiff filed a sur-reply.  (Docket No. 101.) .

# I.

## **Factual and Procedural History**

We derive the following facts from the parties' motions, statements of uncontested material facts, and exhibits.  (Docket Nos. 49; 50; 53; 54; 55; 78; 79; 83; 88; 92; 101.)

Plaintiff holds a doctorate in psychology.  She is of Cuban descent and self-identifies as Cuban and Puerto Rican.  She suffers from severe back ailments as a result of several herniated disks.  Defendant is a Puerto Rico corporation that offers college and post-graduate degrees in psychology.

Defendant hired Plaintiff as an associate professor in 1998 under a one-year contract.  Upon completion of the year, her contract was renewed for an additional three-year term, beginning in the fall of 1999.  After the three-year term passed, her contract was renewed for a five-term.  Typically, Defendant hires faculty members based on a one-year contract, followed by a three-year contract, followed by a five-year contract, followed by a renewable contract for ten years.  All contract renewals are contingent on the faculty member receiving favorable evaluations.  The director of human resources for the University, Carmen Acevedo-Ríos, attested to the filing of various complaints against Plaintiff by other university employees and students.[1]  Apparently none of those prior grievances reached the stage of the filing of a

---

[1] We note that although some of Acevedo-Ríos' testimony is in the form of inadmissible hearsay – specifically her testimony as to the details of faculty members' complaints – we consider her testimony for the limited purpose of establishing the existence of numerous complaints filed against Plaintiff by members of the University community.

1    formal complaint nor were they considered grievous enough to prevent her contract from being

2    renewed.

3          On October 10, 2006, Defendant's human resources director notified Plaintiff that the

4    University's chancellor, Lourdes García, had filed an internal complaint against Plaintiff.

5    García's administrative complaint against Plaintiff highlighted, among other concerns, a

6    confrontational attitude, disrespect, and an inability to complete assignments in a timely manner.

7    (Docket No. 75-4.)

8          On October 16, 2006, in anticipation of the August 2007 termination of her five-year

9    contract, Plaintiff requested a promotion from associate professor to full professor.   On

10   October 17, 2006, Plaintiff filed a complaint at the Anti-Discrimination Unit of the Puerto Rico

11   Department of Labor ("ADU"), alleging that Defendant had discriminated against her and

12   subjected her to a hostile work environment on the basis of her disability, religious beliefs, and

13   national origin.   Specifically, she claimed that Defendants harassed her and made arbitrary

14   demands of her at work; provided her with inferior working conditions because of her disability,

15   religion or national origin; failed to comply with University regulations and procedures

16   regarding Plaintiff's evaluations, promotion, and contract renewal; denied her employment

17   benefits; mocked the way she practiced her religion; failed to accommodate her disability; and

18   intended to terminate her employment.  On November 2, 2006, Plaintiff filed an administrative

19   charge against García based on employment harassment and other complaints.

1        As a result of the two internal complaints, the one filed by García against Plaintiff and

2    the one filed by Plaintiff against García, the University began an internal administrative

3    response.  The University scheduled an administrative hearing for early December 2006, but

4    delayed and rescheduled it several times.

5        After Plaintiff filed her ADU complaint, she requested authorization to make three

6    professional trips to attend conferences and present papers.  These requests were initially

7    denied, though two of those denials were reconsidered and authorization was granted.  In the

8    third instance, the University maintained that only two spots were available for the conference

9    and that two of Plaintiff's colleagues had already been chosen by third-party consultants on the

10   strength of their research proposals.  (See Docket No. 75-9.)

11       On February 27, 2007, the ADU held a hearing on Plaintiff's claims.  Plaintiff expressed

12   her wish to proceed through an alternative mediation process.  However, Defendant stated that

13   it had decided not to renew Plaintiff's contract.  On April 27, 2007, the human resources

14   director informed Plaintiff that her internal complaint against García had been dismissed

15   because Plaintiff had chosen to proceed with her claims at the ADU.

16       On May 10, 2007, the University held a hearing regarding García's complaint against

17   Plaintiff, with attorney Juan Arroyo Elicier ("Arroyo") as the examining officer.  At the hearing,

18   Plaintiff objected to Arroyo's position as examining officer, because he had previously served

19   as an attorney for both the University and Plaintiff.  As a result of these concerns, Arroyo

1    recused himself, and the hearing ended.  On May 14, 2007, the University notified Plaintiff that

2    García's complaint against her was closed without prejudice.

3           On May 15, 2007, Plaintiff submitted a settlement proposal to Defendant.  The next day,

4    Plaintiff received a letter from the University president, Jorge González, officially informing

5    her that her contract would not be renewed in August 2007.  The University has a regulation

6    stating that "[f]aculty search committees have primary responsibility for evaluating the

7    credentials of applicants for Faculty positions . . . [w]hen [employment] decisions are reached,

8    the Faculty member should receive written explanation and has a right to appeal for

9    reconsideration."  However, González did not explain why Plaintiff's contract would not be

10   renewed, and Plaintiff was never evaluated for the renewal of her contract or the promotion she

11   requested.  After receiving the letter of nonrenewal, Plaintiff submitted an appeal to the

12   University's Board of Trustees.  This appeal was ultimately denied, and Plaintiff had to leave

13   her position at the University when her contract expired on August 27, 2007.

14          Plaintiff amended her discrimination complaint before the ADU to include allegations

15   that Defendant decided not to renew Plaintiff's contract and took other adverse employment

16   actions against her in retaliation for Plaintiff's initial filing with the ADU.  Plaintiff also

17   requested permission from the ADU to continue with her claims in court.  On April 29, 2008,

18   the ADU sent Plaintiff a right-to-sue letter.

19          On July 27, 2008, Plaintiff filed suit in this court.  (Docket No. 1.)  Defendant moved for

20   dismissal (Docket No. 11), which we denied (Docket No. 32).  Plaintiff filed her amended

1    complaint on June 26, 2009.  (Docket No. 40.)  Defendant answered (Docket No. 41), and the

2    parties filed cross summary-judgment motions (Docket Nos. 49; 53).

**II.**

**<u>Summary Judgment Under Rule 56(c)</u>**

5         We grant a motion for summary judgment "if the pleadings, the discovery and disclosure

6    materials on file, and any affidavits show that there is no genuine issue as to any material fact

7    and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual

8    dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially

9    affects the outcome of the case.  <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir.

10   2004).

11        The movant carries the burden of establishing that there is no genuine issue as to any

12   material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  In evaluating a motion for

13   summary judgment, we must view the record in the light most favorable to the nonmovant, and

14   we must consider the entire record of admissible evidence.  <u>See Reeves v. Sanderson Plumbing</u>

15   <u>Prods.</u>, 530 U.S. 133, 150-51 (2000).  "Once the moving party has made a preliminary showing

16   that no genuine issue of material fact exists, the nonmovant must produce specific facts, in

17   suitable evidentiary form, to establish the presence of a trialworthy issue."  <u>Clifford v. Barnhart</u>,

18   449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted).  The nonmovant "may not

19   rely merely on allegations or denials in its own pleading; rather, its response must . . . set out

20   specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

Civil No. 08-1819 (JAF)                                                      -7-

1                                     **III.**

2                                   **Analysis**

3    **A.      Title VII Claims**

4           Title VII prohibits employers from "fail[ing] or refus[ing] to hire or . . . discharg[ing]

5    any individual, or otherwise . . .  discriminating against any individual with respect to his

6    compensation, terms, conditions, or privileges of employment, because of such individual's . . .

7    religion . . .  or national origin." 42 U.S.C. § 2000e-2(a)(1).  This prohibition covers discrete

8    acts of employment discrimination, such as termination or refusal to hire, but its reach is not

9    limited to "'economic' or 'tangible' discrimination." Nat'l R.R. Passenger Corp. v. Morgan,

10   536 U.S. 101, 116 (2002).  Even in the absence of an adverse employment decision, § 2000e-

11   2(a)(1) prohibits employers from requiring employees "to work in a discriminatorily hostile or

12   abusive environment." Id.; see also Torres-Negrón v. Merck & Co., 488 F.3d 34, 39-40 (1st

13   Cir. 2007).  Title VII also makes it unlawful for employers to retaliate against employees who

14   seek Title VII's protections. See 42 U.S.C. § 2000e-3(a).  Plaintiff alleges that her religion,

15   national origin, and physical disability motivated Defendant not to renew her contract and to

16   foster a hostile work environment.  In addition, Plaintiff alleges that Defendant's nonrenewal

17   of her contract was retaliation for filing the ADU complaint.  We treat each claim in turn.

Civil No. 08-1819 (JAF)                                                                                    -8-

1    **1.     Discriminatory Nonrenewal of Contract**

2         Unless a plaintiff produces direct evidence of discrimination,[2] we evaluate the

3    circumstantial evidence supporting her claim using the burden-shifting framework first

4    announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[3]  Under this

5    framework, a plaintiff must first present a prima-facie case of discrimination.  Kosereis v.

6    Rhode Island, 331 F.3d 207, 212 (1st Cir. 2003).  A plaintiff makes out a prima-facie case of

7    national origin or religious discrimination if "he is a member of a protected class; (2) he was

8    qualified for the job; (3) the employer took an adverse employment action against him; and

9    (4) the position remained open or was filled by a person with similar qualifications." Id. at 212-

10   13.  By satisfying the requirements of the prima-facie case, the plaintiff creates a rebuttable

11   presumption that the employer has discriminated against the employee.  Velez v. Thermo King

12   de P.R., Inc., 585 F.3d 441, 448 n.3 (1st Cir. 2009) (citing St. Mary's Honor Center v. Hicks,

13   509 U.S. 502, 506-07 (1993)).

14        Once the plaintiff establishes a prima-facie case, the burden of production shifts to the

15   employer to produce a legitimate, nondiscriminatory reason for its employment decision.

---

     [2]  For the purposes of Title VII, "direct evidence" consists of "statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision."  Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000).

     [3]  At the summary-judgment stage, it is unnecessary to distinguish between a single motive theory of discrimination, see 42 U.S.C. § 2000e-2(a)(1), and a mixed motive theory, see 42 U.S.C. § 2000e-2(m).  See Chadwick v. Wellpoint, Inc., 561 F.3d 38, 45 (1st Cir. 2009).  Regardless of the theory under which a plaintiff brings a case, both approaches require "enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias."  Id. (quoting Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003)).

1   Kosereis, 331 F.3d at 212.  While the employer does not have to persuade the court that its

2   proffered reason was the actual motivation for its employment decision, it "must clearly set

3   forth, through the introduction of admissible evidence, the reasons for the [adverse employment

4   decision]."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981).  In a footnote

5   to Burdine, the Supreme Court further explained that "[a]n articulation not admitted into

6   evidence will not suffice.  Thus, the defendant cannot meet its burden merely through an answer

7   to the complaint or by argument of counsel."  Id. at 256 n.9.

8        If the employer satisfies this burden of production, the plaintiff then must prove that the

9   employer's stated reason is merely pretext for discrimination.  Id. at 256.  The First Circuit has

10  noted that no "mechanical formula" exists for finding pretext.  Che v. Mass. Bay Transp. Auth.,

11  342 F.3d 31, 39 (1st Cir. 2003).  One method is to show "weaknesses, implausibilities,

12  inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons

13  such that a factfinder could infer that the employer did not act for the asserted non-

14  discriminatory reasons."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56

15  (1st Cir. 2000) (internal quotations marks omitted).  A plaintiff can also demonstrate pretext by

16  showing that decisionmakers, or those in a position to influence decisionmakers, made

17  discriminatory comments.  Id.  Furthermore, pretext could be shown by evidence of disparate

18  treatment of the plaintiff as compared to other similarly-situated employees.  Kosereis, 331 F.3d

19  at 214.  Finally, the First Circuit has held that inexplicable deviation from a standard business

1    practice or policy may be evidence of pretext.  Kouvchinov v. Parametric Tech. Corp., 537 F.3d

2    62, 68 (1st Cir. 2008).

3          Despite these shifting evidentiary burdens, the standard of proof in Title VII cases

4    remains, by a preponderance of the evidence, as is the conventional rule for civil litigation.  See

5    Desert Palace, Inc. v. Costa, 539 U.S. 90, 99 (2003).  Thus, to prevail in her own summary-

6    judgment motion, Plaintiff must demonstrate that there is no genuine issue of material fact and

7    also must prove by a preponderance that Defendant's stated reasons for not renewing her

8    contract are pretext for discrimination.  By contrast, in order for her claims to survive

9    Defendant's summary-judgment motion, Plaintiff must establish a genuine issue of material fact

10   as to whether "1) the employer's articulated reasons for its adverse actions were pretextual, and

11   2) the real reason for the employer's actions was discriminatory animus based on a protected

12   category."  Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007).

13         Plaintiff alleges that the University did not renew her contract because of a

14   discriminatory animus directed toward her national origin and religion.  (Docket No. 40 at 12.)

15   Plaintiff offered no direct evidence of discrimination.  We, therefore, move to a McDonnell

16   Douglas evaluation of her claim.  Plaintiff has met the light burden of establishing a prima-facie

17   case of discrimination, see Kosereis, 331 F.3d at 213 (noting that a prima-facie case is a "small

18   showing . . . that is not onerous" (internal quotation marks and citation omitted)).  First, she

19   asserts that she is the member of protected classes, Cuban and Catholic.[4]  (See Docket No. 50-

_____

[4]  For purposes of Plaintiff's  argument, we accept the possibility of national origin discrimination against Cubans in Puerto Rico, but we note that Cuba and Puerto Rico are like the wings of the same bird.

1    3.) Second, Plaintiff's affidavit recounts that her contract was renewed three times, following

2    positive evaluations. (See id.) Although Plaintiff's supervisor did file a disciplinary complaint

3    against her, this complaint was withdrawn and never adjudicated; we discount that complaint's

4    probative value accordingly. Plaintiff's nine years of employment with only one disciplinary

5    action filed against her, and later withdrawn, suffices to show that she was qualified for her job.

6    See Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 448 (1st Cir. 2009) (holding a long

7    record of employment without discipline or indications of deficient performance as sufficient

8    to meet the "qualified" prong of the prima-facie case). Third, Plaintiff argues that the

9    nonrenewal of her contract is an adverse employment action. We previously held that

10   nonrenewal of contract is, indeed, an adverse employment action.[5] Finally, Plaintiff was

11   replaced by a professor with similar qualifications. Although Plaintiff's motion for summary

12   judgment does not offer any evidence as to this final prong, Defendant's statement of

13   uncontroverted facts, as supported by Plaintiff's deposition testimony and a statement by

14   Acevedo-Ríos (Docket Nos. 54-2 at 40-14; 54-10 at 2), establishes that both Plaintiff and the

_____

"Cuba y Puerto Rico son / De un pájaro las dos alas / Reciben flores ó balas / Sobre el mismo corazón . . . ." 1 Lola Rodríguez de Tió, A Cuba, in Mi Libro de Cuba: Poesías 3, 5 (Havana, Imprenta la Moderna 1893).

[5] The First Circuit has never explicitly held that the nonrenewal of an employment contract is an adverse employment decision, but it has stated in dicta that a nonrenewal could be the discriminatory act that grounds a prima-facie case under Title VII. See Kassaye v. Bryant Coll., 999 F.2d 603, 607 (1st Cir. 1993). We previously reviewed the law in other circuits and found that the majority of courts held the nonrenewal of a contract to be an adverse employment decision. See Hernández-Mejías v. Gen. Elec., 428 F. Supp. 2d 4, 7-8 (D.P.R. 2005). Recently both the Second Circuit and the Third Circuit have adopted this view. See Leibowitz v. Cornell Univ., 584 F.3d 487, 500-01 (2d Cir. 2009) (holding that nonrenewal of a university employee's contract was an adverse employment action despite the "fact that the employer's decision . . . is completely discretionary"); Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 320 (3d Cir. 2008) ("[F]ailure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action").

1    faculty considered her replacement to be qualified for her former position.  Plaintiff, in her

2    opposition to Defendant's statement of uncontroverted facts, denied this fact only as to the

3    irrelevant issue of her replacement's national origin.  As Plaintiff did not properly deny her

4    replacement's qualifications, the fact has been admitted under Local Civil Rule 56(e).  (See

5    Docket Nos. 79-2 at 2; 101 at 4.)  Because Plaintiff herself was qualified for the job, and both

6    she and the faculty considered her replacement to be qualified, we are able to infer that they

7    were "similarly qualified."  Having established a prima-facie case, the Plaintiff has created a

8    rebuttable presumption of discrimination.

9          In its own summary judgment motion, Defendant failed to articulate the reason for its

10   decision not to renew Plaintiff's contract.  In its opposition to Plaintiff's summary-judgment

11   motion, however, Defendant asserts that it had "good cause" not to renew Plaintiff's contract

12   because of misconduct and various complaints having been filed against Plaintiff in the human-

13   resources office by faculty members and staff.  (See Docket Nos. 78 at 12-13; 83-3.)  In light

14   of the foregoing, we find that Defendant has met its burden of production.

15         It now falls to Plaintiff to demonstrate a genuine issue of material fact as to whether

16   Defendant's legitimate reason for the nonrenewal of her contract was pretext for discriminatory

17   animus.  Plaintiff offers as a basis for pretext the fact that the University's handling of the

18   administrative complaints, filed against Plaintiff by García and vice-versa, deviated from its

19   established policies. (Docket No. 79 at 51.)  Also, Plaintiff argues that the University did not

20   follow proper procedures in evaluating her in anticipation of contract renewal nor in assessing

21   an application for promotion.  (See id.)  Finally, Plaintiff alleges disparate treatment in the

1    administration's denial of her attendance at several professional development conferences.

2    (Docket No. 50 at 20-21.)  In support of these arguments, Plaintiff submitted several University

3    manuals into evidence, including a "General Policies and Disciplinary Procedures Manual,"

4    "Policies and Procedures for Sexual Harassment and Discrimination Grievances," and the

5    "Academic Governance Policy."  (See Docket Nos. 50-5; -6; -9.)  The parties dispute which set

6    of procedures was to be followed in resolving Plaintiff's disciplinary complaint, discrimination

7    complaint, and evaluations for contract renewal and promotion.  Plaintiff has, therefore,

8    established a genuine issue of material fact as to pretext.

9            While we find the existence of pretext to be a trial-worthy issue, we do not find that

10   Plaintiff has succeeded in creating a genuine issue of material fact as to a discriminatory animus

11   being the actual reason behind Defendant's employment action.  Plaintiff's motion for summary

12   judgment (Docket No. 49) and statement of uncontroverted facts and memorandum of law

13   (Docket No. 50) make only conclusory allegations of discrimination without any reference to

14   the factual record.  In those sixty pages, nothing more substantial than the conclusory statement

15   "Plaintiff's termination constituted an act of discrimination in violation of her rights under Title

16   VII" is presented.  (Docket No. 49 at 2.)  Plaintiff's own twenty-page affidavit in support of

17   summary judgment makes no mention of any circumstances in her employment that could lead

18   a reasonable jury to infer discrimination against Plaintiff either because she was Cuban or

19   because she was Catholic.  (See Docket No. 50-3.)

20           Defendant, however, has submitted Plaintiff's administrative complaint against García,

21   her complaint before the ADU, and her deposition into evidence, documents which detail

1    comments and conduct that could be argued to show the University's discriminatory bias.[6]  (See

2    Docket Nos. 75-3, -5; 54-2.)  Plaintiff's administrative complaint against García alleged that

3    García told her, "When you get nervous, your Cuban accent shows" (Docket No. 75-3 at 11);

4    made sarcastic comments about bilingualism and "spanglish" (id.); and stated, "There's a

5    problem with the people from Miami."[7]  (Docket No. 75-3 at 38).  Plaintiff's official complaint

6    before the ADU made similar claims.  (See Docket No. 75-5.)  The First Circuit held that biased

7    comments by a direct supervisor who was a key decisionmaker in terminating an employee

8    could, even where such comments were "stray remarks" not connected to the employment action

9    at issue, support an inference of pretext at the summary-judgment stage.  See Domínguez-Cruz

10   v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000).  But the probativeness of such stray

11   remarks, even those made by key decisionmakers, is "circumscribed" where they are "made in

12   a situation temporally remote from the date of the employment decision in question."  Straughn

13   v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001).  The evidence does not provide any

14   time frame for these comments, nor does it indicate in what manner they are related to the

15   decision not to renew Plaintiff's contract.  Furthermore, as the comments themselves could

16   easily be construed as benign, they are less probative of pretext.  See González v. El Día, 304

17   F.3d 63, 70 (1st Cir. 2002).  Therefore, we hold that these statements of bias are not sufficient

---

[6]At this point, the parties might consider swapping attorneys.

[7] Plaintiff admits, however, that she was unsure whether García was referring to the University's administration, which is based in Miami, or more generally to Cuban people.  (Docket No. 75-3 at 38.)

to create a genuine issue of material fact as to whether Defendant's proffered reasons for nonrenewal of contract are merely pretext for discrimination on the basis of national origin.

The evidence in the record of religious discrimination is even less persuasive.  Plaintiff alleges, in her internal administrative complaint against García, that on May 15, 2002, "several employees formed a circle around me and imitated my religious hymns.  I was surprised to see them imitating me in a mocking fashion." (Docket No. 75-3 at 12.)  The ADU complaint, filed prior to the administrative complaint with the University, added the allegation that García "makes coworkers sing mockingly the songs that I sing at church."  Plaintiff provides no basis for this allegation, much less one based on personal knowledge.   Also, the alleged discriminatory action occurred five years prior to the adverse employment action.  Accordingly, we find that Plaintiff has not shown a genuine issue of material fact as to Defendant's discriminatory animus based on Plaintiff's religion.

The First Circuit has warned on several occasions that courts should be hesitant to grant summary judgment to employers when the issue comes down to whether their proffered reason for the employment decision was actually pretext for discrimination.  See, e.g., Kosereis, 331 F.3d at 216 (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998)).  Such cases are often too close to call at this stage and are properly decided at trial. This concern, however, is not present where the plaintiff has not produced sufficient evidence, in suitable form, to create a trial-worthy question of whether a plaintiff has suffered illegal discrimination; mere conclusory suspicions do not demonstrate a pretext masking discrimination. See Quiñones v. Houser Buick, 436 F.3d 284, 290-91 (1st Cir. 2006).

Civil No. 08-1819 (JAF)                                                                -16-

1        **2.      Hostile Work Environment**

2        A claim of hostile work environment under Title VII exists where a "workplace is

3    permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or

4    pervasive to alter the conditions of the victim's employment and create an abusive working

5    environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993).  To prevail in a claim of hostile

6    work environment, a plaintiff must demonstrate:

7                     (1) that she is a member of a protected class; (2) that she was
8                     subjected to unwelcome harassment; (3) that the harassment was
9                     based on her membership of the protected class; (4) that the
10                    harassment was so severe and pervasive that it altered the
11                    conditions of her employment and created an abusive work
12                    environment; (5) that the objectionable conduct was objectively
13                    and subjectively offensive, such that a reasonable person would
14                    find it hostile or abusive and the victim in fact did perceive it to be
15                    so; and (6) that some basis for employer liability has been
16                    established.

17   Torres-Negrón, 488 F.3d at 39-40.

18       As to national origin and religion, the Plaintiff relies on the same evidence here as for

19   her discriminatory nonrenewal claim.  Those potentially-biased comments toward her national

20   origin and the single incident of religious mockery are not severe and pervasive harassment, nor

21   do they qualify as harassment so objectively offensive as to be considered abuse.  A claim for

22   hostile work environment does not "arise from 'simple teasing, offhand comments, and isolated

23   incidents.'"  Kosereis, 331 F.3d at 216 (quoting Faragher v. City of Boca Raton, 524 U.S. 775,

24   788 (1998)).

Civil No. 08-1819 (JAF)                                                           -17-

1          **3.      Retaliation**

2          A prima-facie case of retaliation under Title VII must establish:  (1) plaintiff's protected

3    participation or opposition, see 42 U.S.C. § 2000e-3(a); (2) a materially-adverse employment

4    action that harmed the plaintiff inside or outside the workplace and that was harmful enough

5    to "dissuade a reasonable worker from making or supporting a charge of discrimination"; and

6    (3) the adverse action taken was causally linked to plaintiff's protected activity.  Mariani-Colón,

7    511 F.3d at 223.

8          Plaintiff succeeded in establishing a prima-facie case.  First, her filing of a complaint

9    with the ADU was clearly protected participation.  See Hochstadt v. Worcester Found. for

10   Experimental Biology, 545 F.2d 222, 230-31 (1st Cir. 1976) ("[S]ection 704(a) clearly does

11   protect an employee against discharge for filing complaints in good faith before federal and

12   state agencies and for registering grievances through channels appropriate in the particular

13   employment setting.").  Second, nonrenewal of contract is an adverse employment action.  See

14   supra note 5.  We believe a reasonable jury could also find the failure both to provide Plaintiff

15   with a formal evaluation and to follow established procedures for adjudicating her complaints

16   was harmful enough to dissuade a reasonable worker from filing a discrimination complaint.

17   See Mariani-Colón, 511 F.3d at 223.  Thus, Plaintiff has demonstrated several materially-

18   adverse employment actions.[8]  Third, the causal link can be demonstrated, without further

_____

[8] While an argument could be made that the denial of authorization and funding for professional trips is also a materially-adverse employment action, the Plaintiff has not made such an argument.  No evidence was submitted as to how the denial of these trips personally harmed the Plaintiff or how she was harmed to such a degree as to dissuade a reasonable worker from filing a discrimination claim.

1   evidence, by the temporal proximity of the adverse employment action to the Plaintiff's

2   protected participation.  See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (holding that

3   occurrence of adverse employment action within one year of protected participation was, by

4   itself, enough to satisfy causal prong of prima-facie case).  Here, the retaliatory events in

5   question took place within eight months of Plaintiff filing the claim with the ADU.

6          Having established a prima-facie case, the burden now shifts to Defendant to produce

7   a legitimate nondiscriminatory reason for its actions.  Defendant justifies its nonrenewal of

8   Plaintiff's contract as having been based on Plaintiff's misconduct and a history of complaints

9   made against her.  (Docket No. 78 at 12-13)  Defendant argues that Plaintiff was not evaluated

10  for a promotion because of a failure to complete an application dossier.  (See id.)  Finally,

11  Defendant argues that it did not deviate from the established disciplinary procedures.  (See

12  Docket No. 78.)

13         While Plaintiff has not proved retaliation by a preponderance of the evidence and,

14  therefore, fails in her own motion for summary judgment, we find that she has created a trial-

15  worthy question as to Defendant's retaliatory intent.

16  **B.     ADA Claims**

17         The ADA prohibits discrimination "against a qualified individual on the basis of

18  disability in regard to job application procedures, . . . advancement, or discharge of employees,

19  . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

1    In her complaint, Plaintiff alleges that Defendant (1) did not renew her contract because

2    of a discriminatory animus directed toward her disability (Docket No. 40 at 5); (2) fostered a

3    hostile work environment (id. at 6); (3) failed to make a reasonable accommodation for her

4    disability (id.); and (4) retaliated against her for exercising her rights under the ADA (id. at 12).

5    **1.      Discriminatory Nonrenewal of Contract**

6    ADA discrimination claims are analyzed under the same McDonnell Douglas rubric as

7    is utilized in the Title VII context.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d

8    252, 264 (1st Cir. 1999).  Thus, a plaintiff establishes a prima-facie case of disability

9    discrimination once she proves that she (1) was "disabled" within the meaning of the ADA;

10   (2) was able to perform the essential functions of her job with or without accommodation; and

11   (3) suffered an adverse employment action "because of [her] disability." Thornton v. UPS, Inc.,

12   587 F.3d 27, 34 (1st Cir. 2009).  The ADA defines a disability as "(A) a physical or mental

13   impairment that substantially limits one or more major life activities; (B) a record of such an

14   impairment; or (C) being regarded as having such an impairment . . . ."[9] 42 U.S.C. § 12102(1).

15   Once a prima-facie case has been established, the employer must advance a legitimate

16   nondiscriminatory reason for its actions.  Tobin v. Liberty Mut. Ins. Co.(Tobin I), 433 F.3d 100,

17   104-05 (1st Cir. 2005).  The plaintiff must then prove the employer's proffered reason was

18   merely pretext "cloaking discriminatory animus."  Id.

_____

[9] Amendments to the ADA that significantly broaden the scope of "disability" under the statute became effective as of January 1, 2009.  These amendments, however, do not apply retroactively to conduct that occurred prior to their becoming effective.  See Thornton, 587 F.3d at 35 n.3.  Therefore, this case is governed by the prior statute and its judicial interpretation.

Civil No. 08-1819 (JAF)                                                                    -20-

1    Plaintiff has neither made an argument nor submitted any evidence to establish that she

2    suffers from a physical or mental impairment that substantially limits a major life activity.  See

3    Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 198 (2002) (requiring ADA plaintiffs "to

4    prove a disability by offering evidence that the extent of the limitation [caused by their

5    impairment] in terms of their own experience . . . is substantial").  Furthermore, Plaintiff has

6    made no showing as to the permanent or long-term nature of her impairment.  See Sánchez-

7    Figueroa v. Banco Popular de P.R., 527 F.3d 209, 214-15 (1st Cir. 2008) (citing Toyota, 534

8    U.S. at 198).  There has been no showing that Plaintiff had a record of a disability.  Plaintiff has

9    argued, however, that "the fact that the Defendant conferred some accommodation shows that

10   the Defendant perceives the Plaintiff as a person with a disability to whom the ADA statute

11   applies."  (Docket No. 79 at 51-52.)  Assuming, arguendo, that the University's providing a

12   reasonable accommodation satisfies the "regarded as" prong of the disability definition,

13   Plaintiff's prima-facie case still fails for a lack of evidence that an adverse action was taken

14   against her because of her disability.  Plaintiff makes only conclusory allegations that she was

15   harassed on account of her disability, providing no specific instances of discriminatory speech

16   or actions toward her, nor any other evidence that would allow a jury to infer that her contract

17   was not renewed because her employer regarded her as disabled.

18       **2.    Hostile Work Environment**

19       The First Circuit has never explicitly held that the ADA provides a cause of action for

20   claims of hostile work environment.  See Quiles-Quiles v. Henderson, 439 F.3d 1, 5 n.1 (1st Cir.

1    2006) ("Although we have not had occasion to evaluate disability harassment as a viable theory

2    of recovery, we have assumed that it is viable.").  Assuming that such a cause of action does

3    exist, it is analogous to a Title VII hostile work environment claim.  See 42 U.S.C. § 12117(a)

4    ("[T]he powers, remedies, and procedures set forth in [Title VII] shall be the powers, remedies,

5    and procedures [the ADA] provides"); see also Tobin v. Liberty Mut. Ins. Co. (Tobin II), 553

6    F.3d 121, 130 n.7 (1st Cir. 2009) (discussing the applicability of Title VII procedures to ADA

7    cases).  Therefore, one of the elements of the prima-facie case for such a claim would be that

8    Plaintiff was harassed because of her disability.  See Quiles-Quiles, 439 F.3d at 5 (noting,

9    without criticism, a lower court's requirement that "hostility was directed at [Plaintiff] because

10   of his disability" as part of prima-facie case of ADA hostile work environment); cf. Torres-

11   Negrón, 488 F.3d at 39-40 (requiring that "harassment was based on [plaintiff's] membership

12   of the protected class" for a prima-facie case of hostile work environment under Title VII).

13   Plaintiff has not produced any evidence – beyond conclusory statements like "I was harassed

14   about it" (Docket No. 79-2 at 2) – that she suffered a hostile work environment because of her

15   disability.  Consequently, Plaintiff's claim for hostile work environment based on a disability

16   fails.

17        **3.    Reasonable Accommodation**

18        Apart from claiming an adverse employment decision, a plaintiff also has a cause of

19   action under the ADA if an employer has failed to make a reasonable accommodation for a

20   disabled individual.  See 42 U.S.C. § 12112(b)(5)(A).  To succeed in a reasonable

1    accommodation claim, a plaintiff must demonstrate "(1) he was disabled within the meaning

2    of the ADA, (2) he was able to perform the essential functions of the job with or without a

3    reasonable accommodation, and (3) [the employer] despite knowing of his disability, did not

4    reasonably accommodate it." Tobin I, 433 F.3d at 107.  The doctor's note submitted by Plaintiff

5    to the University and dated October 23, 2006, requested: "Please excuse her until Oct 30-06

6    Needs Rest.  May do partial work."  (Docket No. 75-6.)  Human resources, in turn, emailed

7    Plaintiff to inform her: "The reasonable accommodation that you requested entails granting you

8    the time to attend your therapy sessions and medical appointments. This has always been

9    granted to you and, therefore, I don't think there will be any problems in continuing with the

10   procedure that has been taking place until now." (Docket No. 75-7.)  Plaintiff argues that this

11   communication establishes that the University regarded her as disabled.  We find a genuine

12   issue of material fact exists as to this question and as to whether the accommodation granted by

13   the University was reasonable.

14        **4.    Retaliation**

15        A cause of action for unlawful retaliation exists under the ADA.  See 42 U.S.C.

16   § 12203(a).  A prima-facie claim of retaliation under the ADA mirrors the prima-facie case of

17   retaliation under Title VII.  See Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st

18   Cir. 2007) ("[A] plaintiff must show that (1) she engaged in protected conduct, (2) she suffered

19   an adverse employment action, and (3) there was a causal connection between the protected

20   conduct and the adverse employment action.").  In accordance with our Title VII analysis above,

1    we find that Defendant's nonrenewal of Plaintiff's contract and deviation from established

2    policies for disciplinary and promotion procedures have created a genuine issue of material fact

3    as to retaliation.

4    **C.    Commonwealth Law Claims**

5         **1.    Law 44**

6         Law 44 is Puerto Rico's disability discrimination statute.  Puerto Rico amended the

7    statute in 1991 in order to bring it into harmony with the ADA.  See Tirado Arce v. Aramark

8    Corp., 239 F. Supp. 2d 153, 169 (D.P.R. 2003).  Because "Law 44 and the ADA are

9    coterminous," any plaintiff that fails to make a prima-facie case under the ADA necessarily fails

10   in her Law 44 claim.  Ruiz-Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 87 (1st Cir. 2008).[10]

11   Plaintiff's Law 44 claim, therefore, cannot survive summary judgment on the basis of

12   nonrenewal of contract or hostile work environment.  A genuine issue of material fact exists as

13   to whether Plaintiff is disabled, as defined by Law 44, and whether Defendant failed to make

14   a reasonable accommodation.

15        **2.    Law 100**

16        Law 100 is Puerto Rico's analogue to Title VII and prohibits discrimination on the basis

17   of both national origin and religion.  See 29 L.P.R.A. § 146.  This statute differs from Title VII,

18   however, in the burden it places on the parties.  Under Law 100, the plaintiff is held to a lower

---

[10] Law 44, unlike the ADA, does not contain a retaliation provision.  Puerto Rico has a separate retaliation statute that applies to all of its anti-discrimination statutes.  See 29 L.P.R.A. §§ 194–194b (2009).  Plaintiff has not made any claim under 29 L.P.R.A. § 194.

1   standard in its prima-facie case.  A plaintiff need only prove by a preponderance of the evidence

2   that she was actually or constructively discharged and allege that she was discharged for a

3   discriminatory reason.  See Hoyos v. Telecorp Commc'ns., Inc., 488 F.3d 1, 6 (1st Cir. 2007).

4   Once this low burden has been met, the employer must prove by preponderance of the evidence

5   that it had good cause, as defined in Law 80, to terminate the employee.  Id.; see also 29

6   L.P.R.A. § 185b (enumerating just causes for discharge).  If the employer makes such a

7   showing, the burden then shifts back to the employee to prove the discharge was motivated by

8   discrimination.  We find that the question of whether Plaintiff's discharge was for "good cause"

9   is a trial-worthy issue.   Section 185b specifically defines "good cause" to include an

10  employee's:

11              (a) indulg[ing] in a pattern of improper or disorderly conduct;
12              (b) . . . not performing his work in an efficient manner, or of doing
13              it belatedly and negligently or in violation of the standards of
14              quality . . .; (c) . . . repeated violations of the reasonable rules and
15              regulations established for the operation of the establishment,
16              provided a written copy thereof has been opportunely furnished to
17              the employee . . . .

18  29 L.P.R.A. § 185b.

19          Given that we have already determined that a genuine issue of material fact exists as to

20  whether Plaintiff's termination was in retaliation for her seeking the legal protections of federal

21  anti-discrimination statutes, and considering that retaliation would not be "good cause," it

22  necessarily follows that a genuine issue of material fact exists that prevents summary judgment

23  for either party on the Law 100 claim.

1        **3.**        **Law 80**

2        Puerto Rico's Law 80 protects at-will employees from termination without just cause,

3    regardless of whether discrimination was involved.  Thus, its reach is longer than Law 100.

4    Furthermore, even employees working under a fixed-term contract may bring a claim under Law

5    80 if "the practice and circumstances involved or other evidence in the contracting were of such

6    a nature that they tend to indicate the creation of an expectation of continuity in employment,

7    or appears [sic] to be a bonafide employment contract for an indefinite period of time."  29

8    L.P.R.A. § 185a.  The statute requires employees to prove only that they were discharged and

9    to allege the discharge was not for just cause.  From the evidence before us, two genuine issues

10   of material fact exist that prevent us from granting summary judgment.  First, it is unclear

11   whether any expectation of renewal existed with Plaintiff's contract.  Second, as noted in the

12   previous section, it is unclear whether the nonrenewal of Plaintiff's contract was for good cause.

13                                                        **IV.**

14                                                  **Conclusion**

15       For the reasons stated above we hereby **DENY** Plaintiff's motion for summary judgment

16   (Docket No. 49).  We **GRANT IN PART** Defendant's summary judgment motion (Docket

17   No. 53) as to the discriminatory nonrenewal of contract and hostile work environment claims

18   under Title VII; the discriminatory nonrenewal of contract and hostile work environment claims

19   under the ADA; and the discrimination claim under Law 44.  Plaintiff's Title VII retaliation and

Civil No. 08-1819 (JAF)                                                        -26-

1    ADA retaliation claims, her ADA reasonable-accommodation claim, and her supplemental Law

2    100 and Law 80 claims survive summary judgment and will be scheduled for trial.

3         Lastly, the parties are urged to consider all settlement possibilities and, to that effect, a

4    final settlement conference will be held on **March 8, 2010, at 1:30 P.M.** Trial shall be held on

5    **March 22, 2010, at 9:30 A.M.** A Final Proposed Pretrial Order will be filed by **March 18,**

6    **2010**.

7         **IT IS SO ORDERED.**

8         San Juan, Puerto Rico, this 16th day of February, 2010.

9                                        s/José Antonio Fusté
10                                       JOSE ANTONIO FUSTE
11                                       Chief U.S. District Judge